AMERICAN SURETY CO. OF NEW YORK v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. April 13, 1909.)

No. 1,502.

POST OFFICE (§ 21*)—TRANSPORTATION OF MAILS—BONDS.

Where a contract for transportation of mail provided that the contractor should account for and pay over all money of the United States which might come into his possession, he being only required to carry mail, and not to carry money as such, his surety was not liable, on his bond for the faithful carrying out of the contract, for the loss by robbery of money belonging to the United States, placed in his mail bag without his knowledge or acquiescence, even though he was an insurer of the safe delivery of money delivered to him for transportation with knowledge.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. § 21.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

For opinion below, see 155 Fed. 941.

The facts are stated in the opinion.

Brode B. Davis, for plaintiff in error.

Edwin W. Sims and Seward S. Shirer, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GROSSCUP, Circuit Judge. The judgment that this writ is brought to reverse is upon a verdict of a jury returned in pursuance of a direction of the judge that the jury should find the issues in favor of the defendant in error upon a certain count of the declaration hereinafter referred to.

The action was upon a bond given by the plaintiff in error to secure the performance of a contract between one George G. Travis and the United States, wherein the said Travis, in consideration of the sum of five hundred eighty-eight dollars per annum, beginning the 15th day of February, 1900, and ending the 30th day of June, 1903, agreed to transport the mails of the United States between the post office in Chicago, and the Masonic Temple station, the Stock Exchange station, and the Crilly station, in the same city. The contract, among other provisions, contained a provision that Travis should "account for and pay over all money belonging to the United States, which might come into his possession." And it is upon this provision that the judgment is based; for though the original declaration alleged negligence in the performance of the contract, whereby the government suffered injury, those counts were dismissed by the Circuit Court for want of evidence to support them.

The action grows out of the fact that on the 12th day of March, 1902, while transporting the mails, the wagon was robbed of a pouch containing fourteen hundred dollars and ten cents, postal funds, and two hundred twenty-eight dollars and twenty-five cents, money order funds, and some other sums, money belonging to the United States. The money thus lost had been enclosed by the Stock Yards post office station, in an envelope, addressed by the post master of that station to the cashier of the Central post office in Chicago, which envelope was enclosed in a pouch known as an inner pouch, enclosed, in turn, in the ordinary mail bag carrying first class matter. The contractor had no knowledge that the mail bag contained such sums of money, nor any money at all. Nor was he guilty of any negligence, either in the way of failure to put proper protections upon his mail wagon, or in his supervision thereof, or in any other respect, to which the robbery is chargeable. The liability of the contractor, and, in consequence, the liability of his surety, if any liability exists, rests wholly upon the provision of the contract above quoted, that he shall account for and pay over any money belonging to the United States that might come into his possession—in other words, the liability relied upon is that of insurer that any money belonging to the United States that may find its way into the mail bags will be delivered to its destination.

The contract between Travis and the government, was to carry the mails. The contract contained many provisions, some of them relating to the character of the wagons to be used, some of them relating to the prompt and proper performance of the service contracted, some of them making him accountable for the faithful performance of such service, not only to the United States, but to any other person aggrieved—provisions, one and all, looking to the safety and secure carriage of the mail—but all of them adjuncts to a mail carrying contract only. If the money lost through the robbery was in the mail thus carried, it must be dealt with so far as Travis's liability goes, as any oth-

er mail matter, viz.: that he shall be "accountable and answerable in damages to the United States, or to any other person aggrieved, for the faithful performance, by the said contractor, of all the duties and obligations herein assumed, or which are now or may hereafter be imposed upon him by law in this behalf"—a provision that does not include, of course, loss by robbery through no fault of the contractor; or it must be dealt with, not as mail, but as money of the United States entrusted to Travis for safe transportation—a view of the case that would not make Travis responsible, for the money was not delivered into his hands as money, and he had no knowledge that he was being made the carrier of money as such. Nor is there anything in the contract requiring him to carry money as money. Indeed the clause referred to has no place in the contract unless it was contemplated, that in addition to the carrying of the mails, the contractor might be entrusted at times with the carriage of post office funds—a possible additional duty under the contract, under which he could not become liable except in cases where he was consciously charged with the additional duty; for certainly the carrier of mail cannot be made liable for the loss of money, even under a provision making him an insurer of the safe delivery of such money, that has been slipped into his mail bag without his knowledge or acquiescence.

The judgment of the Circuit Court is reversed with instructions to grant a new trial, and to proceed further in accordance with this opinion.